UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X     Civil Action No. 5:25-cv-811 (BKS/ML)
RAVEN MARKGRAF, CALEB PEABODY, and BRYAN
CHAPMAN, *on behalf of themselves and all others
similarly situated*,

<table>
<tr><td></td><td></td></tr>
</table>

                           Plaintiffs,             **CLASS AND COLLECTIVE
                                                   ACTION COMPLAINT**

               -against-
                                                   **JURY TRIAL DEMANDED**

YESCA LLC D/B/A CANNABIS DEPOT and
KIMBELRY PARKER, *an individual*,

                           Defendants.
-------------------------------------------------------------------X

Plaintiffs RAVEN MARKGRAF, CALEB PEABODY and BRYAN CHAPMAN (collectively, "Plaintiffs"), on behalf of themselves and all others similarly situated, by and through their attorneys, Bell Law Group, LLC, respectfully allege on as follows:

## NATURE OF CASE

1.     Cannabis Depot, a licensed dispensary in Jefferson County, offers cannabis products, including edibles, actual marijuana, drops, vapes and other products.

2.     Plaintiffs are employed as tipped budtenders at Cannabis Depot. However, Defendants have unlawfully misappropriated the budtenders' tips for themselves and for non-tip eligible employees. In fact, Defendants have mandated that Plaintiffs relinquish up to 50% of their tips, to be shared with non-tipped workers, as a mandatory condition of their employment.

3.     Plaintiffs now bring this action on behalf of themselves and all others similarly situated for Defendants' systemic and continuous violations of: i) misappropriation of gratuities under FLSA, 29 U.S.C. § 203(m)(2)(B); ii) misappropriation of gratuities under NYLL § 196-d; iii) the requirement that employers furnish employees with a written statement at the time of hiring, containing specific categories of information under the NYLL § 195(1), codified as the New York Wage Theft Prevention

Act (the "NYWTPA"); iv) the requirement that employers furnish employees with wage statements on each payday containing specific categories of accurate information under the NYLL § 195(3); v) unlawful deductions under NYLL § 193; vi) unlawful retaliation in violation of FLSA, 29 U.S.C. § 215(a)(3), and NYLL § 215; and vii) any other cause(s) of action that can be inferred from the facts set forth herein.

4.      Additionally, Plaintiffs now bring this action on behalf of themselves and all similarly situated employees, pursuant to the FLSA, 29 U.S.C. §§ 201 et seq., and specifically the collective action provision of the FLSA, 29 U.S.C. § 216(b), to remedy Defendants' violations of the wage and hour provisions of the FLSA, as such violations have deprived Plaintiffs and others similarly situated of their lawfully-earned wages.

5.      Plaintiffs also bring this action on behalf of themselves and a class of similarly situated current and former employees of Defendants, pursuant to Fed. R. Civ. P. 23, for violations of New York Labor Law ("NYLL") § 195 and 12 N.Y. Comp. Codes R. & Regs. ("NYCRR") § 146-2.2 and 2.3.

## JURISDICTION AND VENUE

6.      This Court has federal question jurisdiction under 28 U.S.C. § 1331 because this case is brought under the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA").

7.      This Court has supplemental jurisdiction over the New York state law claims, as they are so related to the claims in this action within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

8.      Venue is proper in this District because Defendants conduct business in this District, and the acts and/or omissions giving rise to the claims herein alleged took place in this District.

**DEMAND FOR JURY TRIAL**

9.       A jury trial is requested on all claims alleged herein.

**THE PARTIES**

10.      Plaintiff Raven Markgraf ("Ms. Markgraf") was and still is a resident of Jefferson County, in the State of New York.

11.      Plaintiff Caleb Peabody ("Mr. Peabody") was and still is a resident of Jefferson County, in the State of New York.

12.      Plaintiff Bryan Chapman ("Mr. Chapman") was and still is a resident of Jefferson County, in the State of New York.

13.      Plaintiffs are covered employees within the meaning of the FLSA, 29 U.S.C. § 201, et seq. and NYLL, N.Y. Lab. Law § 160 et seq.

*YESCA LLC D/B/A Cannabis Depot*

14.      YESCA LLC D/B/A Cannabis Depot ("Cannabis Depot") was and still is a domestic corporation organized and existing under and by virtue of the laws of the State of New York, in the County of Oswego, with an address for service located 56 Elms Rd, Sandy Creek, NY.

15.      Cannabis Depot sells its products in its Jefferson County store and through its online website: https://cannabisdepot420.com/.

16.      At all relevant times, Cannabis Depot employed more than two persons and have been, and continue to be, employers engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Notably, Cannabis Depot sells its products to customers who live in states and countries outside of New York.

17.      Upon information and belief, during each of the three years preceding the date of this complaint, Cannabis Depot have had gross revenues in excess of $500,000 per year.

3

18.    At all relevant times, Cannabis Depot was an "enterprise engaged in commerce or in the production of goods for commerce" under FLSA 29 U.S.C. § 203.

19.    At all times hereinafter mentioned, Cannabis Depot exercised control over the terms and conditions of Plaintiffs' employment, in that the Defendant Cannabis Depot had the power to: (i) hire and fire employees; (ii) determine rates and methods of pay; (iii) determine work schedules; (iv) supervise work and control of the employees, including the Plaintiffs herein; and (v) otherwise affect the quality of the employees' work conditions and employment.

20.    Cannabis Depot was an "employer" of Plaintiffs within the meaning of the FLSA, 29 USC § 203(d), and NYLL § 190(3).

### Defendant Kimberly Parker

21.    Defendant Kimbelry Parker ("Ms. Parker") is the owner YESCA LLC D/B/A Cannabis Depot.

22.    Ms. Parker exercises operational control as it relates to all employees including Plaintiffs and the Collective Action.

23.    Ms. Parker exercises the power to (and also delegates to managers and supervisors the power to): fire and hire employees, supervise and control employee work schedules and conditions of employment, and determine the rate and method of compensation of employees including those of Plaintiffs and the Collective Action.

24.    At all times, Ms. Parker had the authority to effect any changes to the quality and terms of employees' employment, including changing their schedule, compensation, or terminating or hiring such employees, and to reprimand any employees for performing their job duties improperly.

25.    Ms. Parker exercises sufficient control of the operations of the Plaintiffs so as to be an "employer" of Plaintiffs under FLSA 29 U.S.C. § 203(d), and N.Y. Lab. Law § 190(3).

26.     All Defendants are collectively referred to as "Defendants."

## FACTUAL ALLEGATIONS

### Cannabis Depot

27.     Inside Cannabis Depot, there are clear displays of different forms of marijuana, including the vapes, actual marijuana, edibles, and smoking accessories.

28.     The budtenders, such as Plaintiffs help people figure out what a customer is looking for.

29.     It is industry custom to tip the budtenders, and Cannabis Depot promotes his approach. There are tips jars at every register and the first question asked for debit card purchases on the debit card machine is the amount of tips left to be for employees with choices of no tip, 5%, 10%, 15%, 20%, and other amount.

30.     Defendants then misappropriate these credit/debit card tips for themselves and/or share the tips with non tip-eligible employees, without Plaintiffs' consent.

31.     Defendants have not notified Plaintiffs about the precise distribution of the credit/debit card tips, despite Plaintiffs' repeated requests.

32.     Defendants have not notified Plaintiffs about the breakdown of the credit/debit card tips, despite Plaintiffs' repeated requests.

33.     Cannabis Depot also generates sales on its website. Upon selecting products and going through the online checkout process, the customer is given the option to leave a tip, with choices of no tip, 5%, 10%, 15%, 20%, and other amount.

34.     Upon information and belief, the online tips are arbitrarily distributed to employees and management.

35.     Defendants have not notified Plaintiffs about the precise distribution of the online

tips, despite Plaintiffs' repeated requests.

36.     Defendants have not notified Plaintiffs about the breakdown of the online tips, despite Plaintiffs' repeated requests.

37.     Further, adult-use regulations in New York State (9 NYCRR §125.5) require that all persons performing activities under a licensed cannabis business, must complete the New York State Department of Labor's Responsible Workforce Training.

38.     9 NYCRR §125.5 requires, *inter alia*, that a licensee or employer provide the Responsible Workforce Training to employees.

39.     Upon information and belief, Cannabis Depot failed to provide this training to Plaintiffs and to other employees.

## **Plaintiff Raven Markgraf**

40.     Plaintiff Markgraf worked for Defendants as a budtender, from October 2024 through the present.

41.     Ms. Markgraf worked for Defendants between seven (7) and thirty-five (35) hours per week.

42.     Ms. Markgraf was paid $17.00 per hour, plus cash tips, and some of her credit/debit card tips.

43.     To the extent Ms. Markgraf was given tips by credit/debit cards, they were subject to a mandatory unlawful "pooling" system. Specifically, Defendants' mandatory tip-pool included non-eligible employees, including but not limited to Mallory, Nick K., and Nick F.

44.     Moreover, Defendants' alleged pool was not a true "pooling" of tips since Ms. Markgraf never gained any tips from being part of this – she only lost tips. Thus, calling it a "pool" was merely a euphemism for tip misappropriation.

45.    Ms. Markgraf knew that her tips were being misappropriated because the total amount of tips which appeared on her paystub at the end of the week was significantly lower than what she had been given by customers when she processed their in-store payments, as documented on the customers' receipts.

46.    Ms. Markgraf never received a breakdown of who was participating in the purported "tip pool," what portion of her tips were being distributed to other individuals, and what portion of her tips were being allocated to her.

47.    Ms. Markgraf first found out about Defendants' unlawful "tip pool policy," in or about April 28, 2025.

48.    On or about May 4, 2025, Ms. Markgraf communicated to Defendants' Human Resource ("HR") department, that she wished to opt out of this policy because, inter alia; i) the tip pool included non-eligible workers; ii) the tip pool included workers who were compensated at a higher hourly rate; and iii) Ms. Markgraf never benefited from the tip-pool, only lost tips through it.

49.    Defendants insisted that Ms. Markgraf must opt-in to the tip pool, or face immediate termination.

50.    Indeed, on May 22, 2025, Defendants called Ms. Markgraf into a meeting and forced her to sign an unlawful tip pool policy form, on the spot. Defendants made it abundantly clear that if Ms. Markgraf took the form home to deliberate, her employment would be terminated.

51.    Having no alternative, Ms. Markgraf "agreed" to the unlawful tip pool.

52.    Shortly thereafter, Defendants willfully retaliated against Plaintiff Markgraf by reducing her schedule significantly, in or about June 2025, after she complained about being compelled to join an unlawful tip pool.

53.    Additionally, throughout the duration of her employment, Defendants failed to provide

Ms. Markgraf with the required written wage notice upon hiring, in violation of NYLL § 195(1). To the extent such notice was provided, it was inaccurate and misleading, since Defendants misappropriated her tips.

54.    Likewise, Defendants failed to provide Ms. Markgraf with the required wage statements, setting forth specific criteria with each payment, in violation of NYLL § 195(3). To the extent same were provided to Ms. Markgraf, they were inaccurate and misleading, since Defendants misappropriated her tips, and did not provide a breakdown of tips given to Ms. Markgraf and pooled with others.

55.    Defendants' failure to provide Ms. Markgraf with a compliant notice of her pay rate upon hiring, and accurate pay stubs with each payment throughout her employment, in violation of NYLL § 195(1) and NYLL § 195(3), effectively concealed from Ms. Markgraf, or interfered with her ability to identify and assess the wage violations that were, and remain, ongoing. Ms. Markgraf's resulting lack of information complicated, or impeded, her efforts to remedy those violations. Because of the resulting underpayment of wages/tips, Ms. Markgraf was deprived of the opportunity to spend her wages on necessary expenses, including household expenses, food, housing, utilities, and other items; to save her wages in interest-bearing accounts; or to otherwise invest her wages in other ways that could generate additional earnings.

56.    Ms. Markgraf has been designated as a class representative for the FLSA Collective Action and the New York Class. Ms. Markgraf is ready, willing and able to accept the responsibilities of being a class representative.

**<u>Caleb Peabody</u>**

57.    Plaintiff Peabody worked for Defendants as a budtender, from May 1, 2023 through April 20, 2025.

58.     Mr. Peabody worked for Defendants between thirty (30) and forty (40) hours per week.

59.     Mr. Peabody was paid $17.00 per hour, plus cash tips, and some of his credit/debit card tips.

60.     To the extent Mr. Peabody was given tips by credit/debit cards, they were subject to a mandatory unlawful "pooling" system, whereby a portion of his tips were being retained by Defendants and/or being shared by other non-tip eligible employees.

61.     Mr. Peabody first found out about Defendants' unlawful "tip pool policy," in or about January 2025.

62.     Defendants never notified Mr. Peabody about their "tip pooling" system.

63.     Defendants never asked Mr. Peabody whether he wished to join their "tip pooling" system.

64.     Mr. Peabody knew that his tips were being misappropriated because the total amount of tips which appeared on his paystub at the end of the week was significantly lower than what he had been given by customers when he processed their in-store payments, as documented on the customers' receipts.

65.     Mr. Peabody never received a breakdown of who was participating in the purported "tip pool," what portion of his tips were being distributed to other individuals, and what portion of his tips were being allocated to him.

66.     Additionally, throughout the duration of his employment, Defendants failed to provide Mr. Peabody with the required written wage notice upon hiring, in violation of NYLL § 195(1). To the extent such notice was provided, it was inaccurate and misleading, since Defendants misappropriated his tips.

67.     Likewise, Defendants failed to provide Mr. Peabody with the required wage

9

statements, setting forth specific criteria with each payment, in violation of NYLL § 195(3). To the extent same were provided to Mr. Peabody, they were inaccurate and misleading, since Defendants misappropriated his tips, and did not provide a breakdown of tips given to Mr. Peabody and pooled with others.

68.     Defendants' failure to provide Mr. Peabody with a compliant notice of his pay rate upon hiring, and accurate pay stubs with each payment throughout his employment, in violation of NYLL § 195(1) and NYLL § 195(3), effectively concealed from Mr. Peabody, or interfered with his ability to identify and assess the wage violations that were, and remain, ongoing. Mr. Peabody's resulting lack of information complicated, or impeded, her efforts to remedy those violations. Because of the resulting underpayment of wages/tips, Mr. Peabody was deprived of the opportunity to spend his wages on necessary expenses, including household expenses, food, housing, utilities, and other items; to save his wages in interest-bearing accounts; or to otherwise invest his wages in other ways that could generate additional earnings.

69.     Mr. Peabody has been designated as a class representative for the FLSA Collective Action and the New York Class. Mr. Peabody is ready, willing and able to accept the responsibilities of being a class representative.

**Bryan Chapman**

70.     Plaintiff Chapman worked for Defendants as a budtender, from in or about May 2024 through in or about February 2025.

71.     Mr. Chapman worked for Defendants between twenty-five (25) and forty (40) hours per week.

72.     Mr. Chapman was paid $17.00 per hour, plus cash tips, and some of his credit/debit card tips.

73.     To the extent Mr. Chapman was given tips by credit or debit card, they were subject to a mandatory unlawful "pooling" system, whereby a portion of his tips were being retained by Defendants and/or being shared by other non-tip eligible employees.

74.     Mr. Chapman knew that his tips were being misappropriated because the total amount of tips which appeared on his paystub at the end of the week was significantly lower than what he had been given by customers when he processed their in-store payments, as documented on the customers' receipts.

75.     Defendants never asked Mr. Chapman whether he wished to join their "tip pooling" system.

76.     In fact, when Mr. Chapman first found out about Defendants' unlawful tip policy, he objected and said he did not wish to be part of the purported "tip pool." However, Defendants said it was mandatory, and he had no choice but to join the purported "tip pool."

77.     Mr. Chapman never received a breakdown of who was participating in the tip pool, what portion of his tips were being distributed to other individuals, and what portion of his tips were being allocated to him.

78.     Additionally, throughout the duration of his employment, Defendants failed to provide Mr. Chapman with the required written wage notice upon hiring, in violation of NYLL § 195(1). To the extent such notice was provided, it was inaccurate and misleading, since Defendants misappropriated his tips.

79.     Likewise, Defendants failed to provide Mr. Chapman with the required wage statements, setting forth specific criteria with each payment, in violation of NYLL § 195(3). To the extent same were provided to Mr. Chapman, they were inaccurate and misleading, since Defendants misappropriated his tips, and did not provide a breakdown of tips given to Mr. Chapman and pooled

with others.

80.    Defendants' failure to provide Mr. Chapman with a compliant notice of his pay rate upon hiring, and accurate pay stubs with each payment throughout his employment, in violation of NYLL § 195(1) and NYLL § 195(3), effectively concealed from Mr. Chapman, or interfered with his ability to identify and assess the wage violations that were, and remain, ongoing. Mr. Chapman's resulting lack of information complicated, or impeded, her efforts to remedy those violations. Because of the resulting underpayment of wages/tips, Mr. Chapman was deprived of the opportunity to spend his wages on necessary expenses, including household expenses, food, housing, utilities, and other items; to save his wages in interest-bearing accounts; or to otherwise invest his wages in other ways that could generate additional earnings.

81.    Mr. Chapman has been designated as a class representative for the FLSA Collective Action and the New York Class. Mr. Chapman is ready, willing and able to accept the responsibilities of being a class representative.

## FLSA COLLECTIVE ALLEGATIONS

82.    Plaintiffs Ms. Markgraf, Mr. Peabody and Mr. Chapman bring this action pursuant to 29 U.S.C. § 216(b) on their own behalf, as well as those in the following class: Current and former tipped employees of Defendants, during the relevant statutory period, who had tips misappropriated and/or stolen ("FLSA Plaintiffs").

83.    At all relevant times, Ms. Markgraf, Mr. Peabody, Mr. Chapman and the members of the FLSA Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subject to Defendants' decision, plan and common policies, programs, practices, procedures, protocols, routines, and rules of willfully misappropriating tips. The claims of Plaintiffs herein are essentially the same as those of the other

FLSA Plaintiffs.

84.     This case is properly brought under and maintained as an opt-in collective action pursuant to § 16(b) of the FLSA, 29 U.S.C. § 216(b).  The FLSA Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from the Defendants.

## NYLL CLASS ALLEGATIONS

85.     Plaintiffs Ms. Markgraf, Mr. Peabody and Mr. Chapman bring this complaint, pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt persons employed by Defendants in any tipped position during the relevant time period ("NYLL Class").

86.     *Numerosity:* The members of the Rule 23 Class are so numerous that joinder of all members in the case would be impracticable. Plaintiffs reasonably estimate there are at least 40 Class Members who reside and work in New York. The precise number of Class Members should be readily available from a review of Defendants' personnel and payroll records.

87.     *Commonality/Predominance:* There is a well-defined community of interest among the Rule 23 Class Members and common questions of *both* law and fact predominate in the action over any questions affecting individual members. These common legal and factual questions include, but are not limited to, the following:

> a.   whether Defendants misappropriated Plaintiffs' tips;
>
> b.   whether Defendants maintained an unlawful tip pool;
>
> c.   whether Defendants required Class members to share tips with tip-ineligible employees;
>
> d.   whether Defendants failed to keep accurate records of tips retained and pooled by employees;

e.  whether Defendants violated the NYWTPA by failing to provide Plaintiffs and Class Members with sufficiently detailed wage statements with each payment, as required by NYLL § 195(3);

f.  whether Defendants violated the NYWTPA by failing to provide Plaintiffs and Class Members with a written statement upon hiring, required by NYLL § 195(1);

g.  whether Plaintiffs and the members of the Class are entitled to damages, and if so, the method by which such damages should be calculated; and

h.  whether Defendants are liable for the attorneys' fees and costs of the members of the Class.

88.  *Typicality:* Plaintiffs' claims are typical of those of the Rule 23 Class in that the Plaintiffs and all other members suffered damages as a direct and proximate result of Defendants' common and systemic payroll policies and practices. Plaintiffs' claims arise from the same policies, practices, and course of conduct as all other Rule 23 Class Members' claims and Plaintiffs' legal theories are based on the same legal theories as all other Rule 23 Class Members, as detailed above.

89.  *Adequacy:* Plaintiffs will fully and adequately protect the interests of the Rule 23 York Class. Furthermore, Class Counsel, Bell Law Group, PLLC are highly qualified to litigate Plaintiffs' and the class's claims.

90.  *Superiority:* A class action is superior to other available methods for the fair and efficient adjudication of the controversy because, inter alia, it is economically unfeasible for the Rule 23 Class Members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual, along with the fear of reprisal by their employer

91.  The case will be manageable as a class action because the Defendants should have payroll systems that will allow the wage-and-hour damages issues in the case to be resolved with relative ease. Because the elements of Rule 23(b)(3), or in the alternative (c)(4), are satisfied in the case, class certification is appropriate.

92.  Defendants have acted on grounds generally applicable to the Class, thereby making

14

relief, including declaratory and/or injunctive relief, appropriate for the Class.

## FIRST CAUSE OF ACTION
(Misappropriation of Gratuities, FLSA)

93.     Plaintiffs, the FLSA Plaintiffs, and the NYLL Class repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

94.     Section 203(m)(2)(b) of the FLSA provides that "[a]n employer may not keep tips received by its employees for any purposes, including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not the employer takes a tip credit."

95.     In 2018, Congress amended the FLSA to add a cause of action for an employer's unlawful retention of tips. See 29 U.S.C. § 203(m)(2)(B); id. § 216(b) ("Any employer who violates section 203(m)(2)(B) of this title shall be liable to the employee or employees affected in the amount of the sum of any tip credit taken by the employer and all such tips unlawfully kept by the employer, and in an additional equal amount as liquidated damages.").

96.     Plaintiffs, the FLSA Plaintiffs and others similarly situated were "employees" and Defendants were their "employers" under the FLSA, § 203.

97.     Defendants violated the FLSA by unlawfully retaining their budtenders' tips.

98.     Defendants further maintained an improper tip pool and distributed gratuities to non-tip eligible employees.

99.     Defendants' violations of the FLSA were repeated, willful, intentional, and in bad faith.

100.     As a result of Defendants' willful and intentional unlawful conduct, Plaintiffs and the FLSA Plaintiffs are entitled to damages in an amount to be determined at trial, liquidated damages, attorneys' fees, costs, pre-judgment interest, post-judgment interest, all other damages available under federal law, and such other legal and equitable relief as this Court deems just and proper.

## SECOND CAUSE OF ACTION
### (Misappropriation of Gratuities, NYLL § 196-d)

101.    Plaintiffs, the FLSA Plaintiffs, and the New York Class repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

102.    Pursuant to NYLL § 196-d, "[n]o employer or his agent or an officer or agent of any corporation, or any other person. . . shall demand or accept, directly or indirectly, any part of the gratuities, received by an employee, or retain any part of a gratuity or of any charge  purported to be a gratuity for an employee."

103.    Here, at all relevant times, Defendants collected and retained gratuities which were given to Plaintiffs.

104.    Defendants unlawfully compelled Plaintiffs and the proposed members of the NYLL Class to participate in a mandatory tip pool.

105.    As a result of Defendants' unlawful conduct, Plaintiffs and the proposed members of the NYLL Class were denied tips to which they were otherwise entitled.

106.    Defendants willfully and intentionally violated § 196-d of the NYLL.

107.    As a result of Defendants' willful and intentional unlawful conduct, Plaintiffs and the proposed members of the NYLL Class are entitled to damages in an amount to be determined at trial, liquidated damages, attorneys' fees, costs, pre-judgment interest, post-judgment interest, all other damages available under New York law, and such other legal and equitable relief as this Court deems just and proper.

## THIRD CAUSE OF ACTION
### (Failure to Provide Notices Upon Hiring in Violation of the NYLL § 195(1))

108.    Plaintiffs, FLSA Plaintiffs, and the New York Class repeat, reiterate, and reallege each

16

and every allegation set forth above with the same force and effect as if more fully set forth herein.

109.    Pursuant to the New York Wage Theft Prevention Act ("WTPA"), employers must provide employees with notice "at the time of hiring" of, among other information, "the rate or rates of pay and basis thereof," and "allowances, if any, claims as part of the minimum wage, including *tip*, meal, or lodging allowances." N.Y. Lab. Law § 195-1(a) (emphasis supplied).

110.    Defendants knowingly failed to comply with this provision by failing to provide Plaintiffs and Class Members with any kind of notice upon hiring, let alone a notice meeting the requirements of NYLL § 195(1)(a).

111.    Specifically, to the extent any notices were given to Plaintiffs, it did not advise Plaintiffs that their tips would be deducted. Moreover, as Plaintiffs' tips were unlawfully taken, any such notice would have been deficient in the first instance.

112.    Based on the foregoing, Defendants are liable to Plaintiffs and Class Members in the amount of $5,000.00 per employee, plus reasonable attorney's fees and costs, and any other relief appropriate pursuant to NYLL § 198.

## FOURTH CAUSE OF ACTION
### (Failure to Provide Wage Statements in Violation of the NYLL § 195(3))

113.    Plaintiffs, the FLSA Plaintiffs, and the New York Class repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

114.    Pursuant to NYLL § 195(3), every employer is required to:

> furnish each employee with a statement with every payment of wages, listing the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages.

115.    During the course of Plaintiffs' and Class Members' employment, Defendants consistently and willfully failed to provide them with adequate wage statements as required by New York law. To the extent any paystubs were given to Plaintiffs, they were inaccurate and misleading, since they did not reflect the tips deductions taken by Defendants.

116.    NYLL § 198(1)(d) provides that any employee not provided appropriate wage statements may collect damages of $250.00 for each work day that the violation occurred or continued to occur, up to a total of $5,000.00 per employee, together with costs and reasonable attorneys' fees, as well as appropriate injunctive and/or declaratory relief.

117.    Defendants are therefore liable to Plaintiffs and Class Members in the amount of $5,000.00 per employee, plus reasonable attorney's fees and costs, and any other relief appropriate pursuant to NYLL § 198.

## FIFTH CAUSE OF ACTION
### (Unlawful Deductions in Violation N.Y. Lab. Law §§ 193(1)(a))

118.    Plaintiffs, the FLSA Plaintiffs, and the New York Class repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

119.    NYLL § 193(1) provides that "[n]o employer shall make any deduction from the wages of an employee, except deductions which: (a) are made in accordance with the provisions of any law or any rule or regulation issued by any governmental agency . . . ." N.Y. Lab. Law § 193 (1) (a).

120.    Defendants' deductions from Plaintiffs' compensation were not in accordance with any law or regulation.

121.    Specifically, Defendants have taken a portion of Ms. Markgraf's, Mr. Peabody's, and Mr. Chapman's tips and gratuities that they received directly from customers while working as a

18

budtender for Defendants.

122.    As a result of Defendants' willful and intentional unlawful conduct, Plaintiffs and the proposed members of the NYLL Class are entitled to damages in an amount to be determined at trial, liquidated damages, attorneys' fees, costs, pre-judgment interest, post-judgment interest, all other damages available under New York law, and such other legal and equitable relief as this Court deems just and proper.

### SIXTH CAUSE OF ACTION BY PLAINTIFF MARKGRAF
### (Retaliation in Violation of FLSA, 29 U.S.C. § 215(a)(3))

123.    Plaintiff Markgraf realleges and incorporates by reference the foregoing allegations as if set forth fully here.

124.    Defendants willfully retaliated against Plaintiff Markgraf by reducing her schedule significantly, in or about June 2025, after she complained about being compelled to join an unlawful tip pool, in violation of 29 U.S.C. § 215(a)(3).

125.    As a result of Defendants' willful and intentional unlawful conduct, Plaintiff Markgraf is entitled to damages in an amount to be determined at trial.

126.    Plaintiff Markgraf is also entitled to costs of Court, and attorneys' fees incurred by her counsel, pursuant to 29 U.S.C. § 216(b).

### SEVENTH CAUSE OF ACTION BY PLAINTIFF MARKGRAF
### (Retaliation in Violation of NYLL § 215)

127.    Plaintiff Markgraf realleges and incorporates by reference the foregoing allegations as if set forth fully here.

128.    Defendants willfully retaliated against Plaintiff Markgraf by reducing her schedule significantly, in or about June 2025, after she complained about being compelled to join an unlawful tip pool, in violation of NYLL § 215.

129.    As a result of Defendants' willful and intentional unlawful conduct, Plaintiff Markgraf is entitled to damages in an amount to be determined at trial.

130.    Plaintiff Markgraf seeks, and is entitled to, attorneys' fees incurred by her counsel, costs of Court, and interest.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiffs, individually and on behalf of all others similarly situated, pray for the following relief:

   a.   Certifying the New York Class in accordance with Fed. R. Civ. P. 23(b)(3) or (c)(4) with respect to the claims set forth above;

   b.   Designating Plaintiffs Raven Markgraf, Caleb Peabody and Bryan Chapman as Class Representatives;

   c.   Designating Bell Law Group, PLLC as Class Counsel;

   d.   Granting judgment in favor of Plaintiffs, FLSA Plaintiffs, and the New York Class, and against Defendants, and awarding the amount of unpaid and misappropriated tips, with liquidated damages;

   e.   Awarding liquidated damages to Plaintiffs, FLSA Plaintiffs, and the New York

   f.   Awarding all other available compensatory damages to Plaintiffs, FLSA Plaintiffs, and the New York Class, including, inter alia, all unpaid wages, lost interest owed, and liquidated and double damages by Defendants under the FLSA, NYLL, and NYWPTA;

   g.   Awarding reasonable attorneys' fees and costs incurred by Plaintiffs in filing this action;

   h.   Awarding pre-judgment and post-judgment interest to Plaintiffs on these damages; and

   i.   Awarding such further relief as this court deems just and proper.

Dated: New York, New York
          June 23, 2025

                              Respectfully submitted,

                              BELL LAW GROUP, PLLC

20

By: _____
Chaya M. Gourarie, Esq.
Bell Law Group, PLLC
116 Jackson Avenue
Syosset, New York 11791
T. 516-280-3008
 CG@belllg.com
*Attorneys for Plaintiffs and Putative Class*